Good morning, Your Honors, and thank you. May it please the Court, I'm Joshua Hammack on behalf of plaintiffs, and I'd like to reserve five minutes of my time for rebuttal. All right, go ahead, please. This appeal concerns an unprecedented constitutional invention, a due process right to sport-specific advocacy that applies at all stages of Title IX litigation. The district court created this right, sua sponte, and then relied on it at least three times to deny certification of an all-female student-athlete class. This holding is so contrary to law that Fresno State has made no attempt to defend it. Instead, it pretends it doesn't exist. Why couldn't we just clarify that that's not what the district court did? There is no way to clarify that it's not what the district court did, because the district court did exactly that, and said multiple times that what it was relying on was a persistent, pervasive due process right to sport-specific advocacy. But what if we find that it was making a fact-specific inquiry, which it was required to do under Rule 23? I think you're right that it was required to make that fact-specific inquiry, but all of the facts point to the opposite direction. The only thing that stood in the way of certification with respect to adequacy was the supposed due process right. Consider, for example, the allegations in the complaint, which the district court noted were program-wide and sought program-wide relief. But, you know, I looked at that complaint. Women's lacrosse is all over it. The injunctive relief asks for women's lacrosse relief. I mean, if you just look throughout the document, I can't say that the district court was wrong in saying this was a women's lacrosse complaint. It's true, Your Honor, that the complaint was brought by former women's lacrosse players. That's the only women's team that was threatened with elimination. That's the only team that was, in fact, eliminated. So the appearance of women's lacrosse in the complaint is no surprise. But look closely at the declaratory and injunctive relief requested, and it is not limited to women's lacrosse. It asks that Fresno State be enjoined from eliminating any women's participation opportunities. Okay, let's look at paragraph 260. Plaintiff seek expedited preliminary permanent injunctive relief requiring defendants to stop discriminating in the operation of Fresno State's intercollegiate athletics program to treat the women's lacrosse team at least as well as other varsity teams this academic year and to continue the women's lacrosse team at Fresno State in the 2021-2022 academic year and beyond. And, I mean, the very first paragraph under injunctive relief says, you know, paragraph 212A, treat the women's lacrosse team and its members at least as well as the men's varsity teams, and B is preserve the women's lacrosse team into 2021-2022 and beyond. So I don't think these paragraphs can be read in isolation. Take the complaint as a whole. There are spots throughout the complaint where we requested broad relief, yes, that included the women's lacrosse team, but that also included all participation opportunities at Fresno State. And the court noted that three separate times. So it's that the court did not hold that the complaint was limited to women's lacrosse, that it only sought relief specific to women's lacrosse. It said the exact opposite three different times. The same if you move to the preliminary injunction where the court repeatedly noted that what plaintiffs sought was an injunction that prohibited the elimination of any women's participation opportunity, not just the elimination of the women's lacrosse team. Consider then the declarations and the testimony from plaintiffs. I think the chart on page 54, 55 of our brief is extremely helpful in that respect. Yes, the district court plucked a few snippets of testimony, but it said it was crediting the testimony and declarations. It didn't say it was crediting every 100th word, but the whole thing. And the plaintiffs were very clear over and over that while they might be sad or disappointed if lacrosse were gone for good, this case was about something bigger. It was about broad Title IX compliance. It was about substantial proportionality with participation opportunities, and it was about equal treatment for all women. But that was the second round of declarations. In the first round of declarations, you submitted an expert report that basically kind of criticized the other women's sports teams saying, look, they have ghost memberships, criticizing equestrian, female equestrian rosters, cross-country rosters, female indoor track, female outdoor track. It definitely was not, I mean, it was basically critical of women's intercollegiate athletics that were other than lacrosse. I disagree with that characterization, Your Honor. The goal of the expert report that we submitted, again, this is day one with the preliminary injunction, was to convert publicly available EDA data, right, one set of participation numbers that counts participants differently than Title IX into valid Title IX counts. Everyone agrees the two things, EDA and Title IX, count participants differently. Our expert was trying to convert one to the other. The district court recognized this fact contemporaneously, and so, too, did Fresno State. Fresno State said that what she was trying to do is reverse engineer Title IX counts from a different counting methodology. So the criticism wasn't directed at equestrian or track and field. The criticism, such as it was, was directed at EDA counts, Fresno State's EDA counts, that look at participants differently and might count participants who aren't receiving genuine Title IX opportunities. That's the fundamental difference there with respect to the expert report. Counsel, Judge Gould, if I could interject a question or two. In order to certify the class, don't we have to determine that the representative is an adequate representative? Absolutely, Your Honor. In order to certify, we would need adequate representatives, yes. Okay, and then second, because the court seemed to have thought it was dealing with a class involving all women's sports, it would seem reasonable to think that the plaintiffs here weren't adequate to represent that broadly defined class. But what I'm wondering is whether we could affirm the district court's denial of certification of a broad class of all women's sports, but remand specifically directing, instructing the district court to address whether a class could have been certified, limited to lacrosse players or wannabe lacrosse players. I don't think anything prevents the court from pursuing that route, and I think the district court both invited that motion and withheld deciding it pending the outcome of this appeal. But I want to note, however, the idea that these plaintiffs are inadequate as to the broader class of all female student-athletes is simply wrong. The liability tests for Title IX, let's start there, big picture, concern program-wide opportunities and program-wide treatment. There is no way for plaintiffs to prove up their Title IX claims in a sports-specific way. It couldn't be done only as to women's lacrosse. The tests themselves forbid it. Then consider remedies, right, the next stage and the stage, frankly, that the district court was so concerned with. It held over and over that Fresno State has finite resources and that teams at Fresno State compete for those finite resources. But these assumptions are, in fact, misguided. Nothing in Title IX requires Fresno State to expend increasing amounts on women athletes or offer them more and more participation opportunities. Neal, this court in Neal, said the exact opposite, right? A school out of compliance with Title IX has options. It has flexibility. It can level down the men's program or it can ratchet up the women's program. And frankly, Title IX doesn't care which option, which avenue the school takes. That's why schools faced with findings of noncompliance are given the opportunity to create compliance plans. The plaintiffs won't control whether a team is added, right? Fresno State, even if it's out of compliance, could decide to cut men's opportunities. So the plaintiffs won't control whether a team is added and they won't control which team is added. So there's no inadequacy there. There's no conflict there. And, again, recall the district court itself held that, as to typicality, the proposed class representatives are squarely in alignment with the class members. Can I ask you a question? You argue that the district court's finding of typicality and commonality is inconsistent with the district court's finding that the adequacy requirement was not met. But the Ninth Circuit in Kim v. Tender, a published opinion that was just issued on December 5th, says that you can't conflate adequacy and typicality. And it just says, the typicality inquiry, on the other hand, involves a more permissive standard, simply asking whether representatives' claims are reasonably coextensive with those of absent class members. While a lack of typicality can indicate that a class representative may be inadequate, the two inquiries are not the same. So you want to respond to this new case. How are we supposed to look at your argument that there's an inconsistency there based on this new opinion? I think if all the court did was meet that lower threshold for typicality, that there's some convergence of interests here, you might have an issue, frankly. But look at AmKim, and the three, commonality, typicality, and adequacy, are all aimed together at ensuring that the class representative's interests are aligned with the class's, the absent class member's interests. And the district court here held that they're not just interrelated claims. There's not just some alignment. They are squarely in alignment. They are on all fours. Everyone in the class, including the plaintiffs and the proposed class representatives, has the exact same claim with the exact same elements that requires program-wide analysis and that will involve a remedy they won't control and that Fresno State will. The fundamental problem with the district court's order, Your Honor, is that there is no constitutional right to sport-specific advocacy. We ask that the court reverse the certification orders and remand to the district court. Thank you. All right. Thank you. You have 3 minutes and 49 seconds. Good morning, Mayor of the Police Court. Scott Eldridge on behalf of the defendants. I think the plaintiff's position in this case is simply that the district court made an improper legal ruling and conclusion. And we're fundamentally at odds with that presentation of the district court's decision. The district court made a fact-specific inquiry here about the application of Rule 23A, Subparents 4, which it was obligated to do, about whether these particular proposed class representatives are adequate under that. The district court held that the representatives' neutrality would violate due process, but their partiality to lacrosse would violate Rule 23. So does this mean that a representative from one sport can never adequately represent class members in other sports? No, Your Honor, and that's one of the areas where we believe the plaintiff's position has stretched the district court decision to a point that is not supported by the actual district court decision. They've stretched it a couple of ways. One, they contend that the district court made this broad, sweeping pronouncement in all Title IX class certification cases that a single student athlete cannot represent an all-inclusive multi-sport class. The district court did not say that. No, the district court did not say that, but, I mean, that's essentially the outshot of the tension between the Rule 23 and neutrality requirements. And I disagree, and here's why. Two reasons. I think you have to look at it on both sides of this tension. The first side of the tension is, do they have a conflict? And the court made a factual determination that, on the record, developed they do have a conflict, and that includes with respect to the liability stage of the case. Does anything in the record suggest that the proposed class representatives could dictate or control how Fresno State comes into compliance with Title IX? They would certainly object to any compliance plan, I'm sure, that Fresno State were to put together, unless counsel was ready to concede that they would never object. But Fresno State can address Title IX violations in a number of ways. I think, as your friend on the other side indicated, that they could include adding different women's teams or take away men's teams. So that's a decision that's left entirely to Fresno. True. All of that assumes, though, that 23A4 does not apply at the liability stage and doesn't have to be determined at the liability stage, and it absolutely does, and there's a conflict at the liability stage, despite this idea that plaintiffs propose about program-wide analyses. Yes, courts look to whether, from a participation claim standpoint, whether there's substantial proportionality throughout the athletics department. But how do you get to that determination? It's a very detailed determination about who is a participant under Title IX. And as you heard even earlier from Judge Koh, plaintiffs took direct aim at absent class members in their preliminary injunction briefing and their complaint, getting to that very issue, who is a participant. They argued that equestrian student-athletes and female track and field student-athletes are not legitimate athletes, and that goes directly to how you prove liability in this case, because that determines the size of the participation gap. Can I ask, if the district court made the broad constitutional ruling that the plaintiffs claim, you would agree that would be wrong? Yes, I agree that would extend beyond what the law permits. The district court did not rule that one individual, one proposed class representative, cannot represent multi-sport, all-inclusive class members. He did not rule that. Right, but if they did, that would be wrong. There's no support for that out there. This district court made a very fact-intensive inquiry about these particular class representatives. In addressing, Your Honors, the other half of the tension, if I may, this idea about neutrality, this new professed neutrality through their second set of declarations in support of their renewed motion for class certification makes no mention of any other sport. Instead, it says, well, we're going to advocate for everybody. I think what the court's problem was with that is that it doesn't satisfy the other part of the 23A4 analysis, which is that you have to look to whether they're going to be adequate representatives for sport-specific student-athletes. That doesn't mean, and I think plaintiffs stretched the district court's decision in this way as well, it doesn't mean that the court said you need someone from every single sport to be a class representative to adequately represent an all-inclusive multi-sport class. What the court was saying is that someone has to stand up and advocate for the female volleyball players. Someone has to stand up and adequately advocate for the tennis players. And what the court decided was their pronounced neutrality is so neutral that they're going to just throw their hands up and take a laissez-faire approach. No one's saying, and there's no fact record evidence suggesting that these particular student-athletes are going to successfully advocate and adequately advocate for those other female students. What if we find there was a conflict as to the equal treatment class but not as to the equal accommodation class? Then what do we do? I think you can remand it to the court for further determination about that. The district court, and we don't think the district court got this wrong, the district court said, you know, in a footnote, I believe, that the same analysis about the conflict applies equally to the equal treatment and benefits claim. And again, that's because an equal treatment or benefits claim requires someone to be able to advocate about those specific sports. These two class representatives, during their depositions, expressly admitted that they weren't aware of the treatment and benefits of other female sports, only lacrosse and only some of the men's sports. So I think what the district court did correctly, based on that developed factual record, was make a determination that they, because of their neutrality and because of their testimony, they've demonstrated a clear inability to adequately advocate for those particular non-present or absent class members. I'm sorry, Your Honor. Counsel, Judge Gould with a question. So how do you respond to the question I posed to Appellant? That is, would it be correct for our court to affirm the district court's decision on the broad class that the district court seemed to be defining, but remand with directions for the court to address whether a class with these representatives could be certified that was just related to the women's lacrosse team? Yes, Your Honor. I think you can do that. And the court did invite that sort of option for plaintiffs, which they pursued. While pursuing this appeal on behalf of the all-inclusive multi-sport class, with the same class representatives, they simultaneously filed a motion to certify a lacrosse-only class. We filed an opposition to it for a variety of reasons, but that motion was never decided because the judge dismissed it without prejudice pending the outcome of this appeal. But yes, Your Honor, I think that is an option that you could undertake and send it back down to the court for the court to hash that particular dispute out. Thank you. One of your arguments is not particularly persuasive, and I'm wondering if we could get a concession today that might make our work easier, and that is you're arguing that the plaintiffs are untimely. This court already granted the 23-F petition to allow us to consider the class cert ruling. The district court and you treated the second motion for classification as a renewed motion, as a motion for reconsideration, which would then make that the final order and not the original class cert order. Can we at least clear some of the brush here and say the timeliness argument? We're here, right? We're taking this appeal. Why keep arguing something that is not meritorious? It's fair, Your Honor, and it's clear to us what the court is going to rule in that regard, how the court is going to rule in that regard, so we're happy to concede that point. You're going to concede untimeliness. We'll concede the timeliness. Thank you. Thank you. Appreciate that. That will make our work more simple on the resolution. Thank you. Unless there are other questions, we'll rest on our briefs. I appreciate the court's attention. Judge Desai, do you have any questions? No, thank you. Judge Gould, do you have any further questions? No questions. All right. Thank you. Thank you, Your Honor. Thank you. Thank you, Your Honor. Just a couple of quick points in response. I want to start with a point of agreement. We agree that Rule 23a.4 applies at the liability stage as well, but again, the point is that there can be no conflict as to liability. The tests themselves remove any potential conflict by focusing broadly on a program-wide reality. Think about Rule 23b.2 here, right? An entity's conduct where it acts or refuses to act in a way that broadly affects a group. Well, here the group is female student-athletes or women at Fresno State generally. That's the group affected by institutionalized discrimination that creates a common injury. And the court again held there is a common injury here. All the class members suffer the same harm. There's no conflict as to liability. There can be no conflict as to liability. Then switch again to the remedies. And you noted, Your Honor, that plaintiffs frankly have no control over the remedies, or at least there's no reason to believe right now that they will necessarily control any remedies. And the only response you got from counsel is that we would certainly object to a compliance plan. Based on what? All of the evidence suggests just the opposite. In fact, plaintiffs themselves made a settlement offer that allowed Fresno State to add not women's lacrosse, but any other team, any other women's team that it chose to create substantial proportionality. Again, program-wide. So the notion that we would certainly object not only contradicts the allegations in the complaint and the testimony and the declarations, which, by the way, the second set of declarations is not inconsistent with the first set, nor is it inconsistent with the testimony. Again, I would refer, Your Honors, to the chart in our brief. But there's just no reason to believe that we would object. So if we think that conflict was actually a finding of fact by the district court and not some broad constitutional ruling, then you would agree the standard is clear error. I do agree with that, Your Honor, yes. I agree the standard would be clear error. Actually, I'm sorry. But otherwise, okay, factual findings, yes, but otherwise it would be abuse of discretion, right? The decision to certify the class generally is an abuse of discretion, but the factual finding about whether there is a conflict based on testimony or declarations or whatnot would be reviewed for clear error. And, again, the district court. It's a pretty differential standard. It is, Your Honor. But here's the reality, and I think that needs to be elevated here. The district court twice held that it was crediting the proposed representative's declarations and testimony. It didn't say it was crediting this piece and discrediting other pieces. It said it was crediting it all. So when you review all of that testimony and the proposed class representatives repeatedly say, sure, I might be sad, sure, I might be disappointed, but this case is about something bigger. This case is about broad Title IX compliance, substantial proportionality program-wide, and equal treatment for all women. And I do want to turn really quickly to two points. The notion that the class representatives didn't have adequate pre-discovery knowledge about the treatment of every other team. That simply isn't a requirement under the law. They knew the elements of their claims, and they were prepared to pursue those claims in discovery and beyond. That's all that's required. And then the last point, Your Honor, is back to that expert report, which I think was misrepresented again. The fundamental issue there is figuring out who is a participant. We can start with that point of agreement. But the expert had to work with EDA numbers, not Title IX numbers. So the only effort was to figure out who actually counts as a participant under Title IX, not a different regime. Thank you, Your Honors. We ask that you reverse. All right. Thank you to both counsel. Thank you for your very helpful arguments. Thank you for leaving time on the table. All right. If we could please then have counsel for the next case.
judges: GOULD, KOH, DESAI